## No. 9860.
### Orleans Appeal.

---

**THE M. FEITEL HOUSE WRECKING CO., INC., Appellant, v. CITIZENS BANK & TRUST CO. OF LA., ET AL.**

(April 13, 1925, Opinion and Decree.)

(May 11, 1925, Rehearing Refused.)

(Judgment Court of Appeal Affirmed by Supreme Court. 159 La. —, 106 South. 291.)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Banks and Banking—Par. 47, 51.**
   The payee of a check, whose endorsement has been made without its authority and payment made by the bank upon which it is drawn cannot maintain an action against the bank to recover the amount of the check. His remedy is against the maker.

2. **Louisiana Digest—Banks and Banking—Par. 47, 51.**
   A bank which accepts for deposit and credits its depositor with the amount of a check bearing the unauthorized endorsement of the payee is not liable to the payee for the amount of the check. The fact that the words "Endorsement guaranteed payment through New Orleans Clearing House" is stamped on the back of the check by the bank receiving same is immaterial since such words do not import an acceptance of the instrument.

(Sections 21 and 23 of Act No. 64 of 1904. Editor's note.)

Appeal from Civil District Court, Hon. M. M. Boatner, Judge.

This is a suit to recover money from two banks in solido for the payment of a draft to one not authorized to endorse or receive payment for plaintiff. There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Arthur B. Leopold, attorney for plaintiff and appellant.

Dufour, Goldberg & Kammer, attorneys for defendant and appellee.

Merrick & Schwartz, attorneys for Canal-Commercial Trust & Savings Bank, attorneys for defendant and appellee.

WESTERFIELD, J. Plaintiff sues the Citizens Bank & Trust Co. and the Canal-Commercial Trust & Savings Bank, alleging that the defendant banks are indebted to it, *in solido*, in the sum of $317.25 under the following circumstances.

That on or about February 15, 1922, the New Orleans & North Eastern Railroad drew in favor of petitioner its draft for $317.25 on the Canal Bank in payment of refund on freight covering shipment of materials from Chickasaw, Alabama, to New Orleans, then due and owing to petitioner, and delivered the said draft to the Merchants Railway Traffic Ass'n, Ltd., who acted as petitioner's agent for the sole purpose of collection of said claim for refund, said draft being in the following words and figures, to-wit:

"New Orleans & Northeastern Railroad Company Station (No. 1826), N. O., La., Basin St. Station, 2/15, 1922. Pay to the order of M. FEITEL HOUSE WRECKING CO. Three Hundred & Seventeen 25/100 Dollars, $317.25, balance due for freight charges.

Drawn on the Assistant Treasurer, N. O. & N. E. R. R., Cincinnati, Ohio, payable through Canal Bank & Trust Co., of N. O., La.

Draft No. B428.

(Signed)  G. T. WASHINGTON,
Agent."

That thereafter, to-wit: on or about February 16, 1922, the Merchants Railway Traffic Ass'n, Ltd., by B. E. Slawter, President, wrote the name of petitioner on the back of said draft as its alleged and pretended agent, in the following words and figures, to-wit:

"MERCHANTS RAILWAY TRAFFIC AS-
SOCIATION, LTD.,
B. E. Slawter, Pres.,
Agent and Attorney in Fact
for
M. FEITEL HOUSE WRECKING CO."

and it did then and there deposit the same, to its account, in the Citizens Bank, for collection, which bank thereupon guaranteed the aforesaid endorsement of said Merchants Railway Traffic Ass'n, Ltd., by stamping on the back of said draft the following words and figures, viz.:

"Through New Orleans Clearing House,
Endorsement guaranteed.
New Orleans, La., Feb. 16/22."

It is further alleged that the Canal Bank paid the draft and that plaintiff was in ignorance of the collection and deposit of same by its agent who was without authority to endorse the draft and that the Citizens Bank knew or ought to have known that plaintiff's agent was unauthorized to endorse for it and that "by the acts and doings of said banks as aforesaid petitioner has sustained a loss of $317.25."

Each defendant filed an exception of no cause of action and from a judgment maintaining both exceptions plaintiff has appealed.

The basis of plaintiff's action is the endorsement by the Citizens Bank which, it is argued, was negligent and actionable in tort for the reason that it afforded plaintiff's agent an opportunity to defraud plaintiff. The bank should have made inquiry as to the authority of the endorser since the check was in plaintiff's name and signed by the bank's depositor by procuration, it is said. We are referred to the following provision of Sec. 21 of the Negotiable Instruments Law (Act 64 of 1904):

"A signature by procuration operates as notice that the agent has but a limited authority to sign, and the principal is bound only in case the agent in so signing acted within the limits of his authority."

And to Sec. 23 also:

"Where a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument or to give a discharge therefor or to enforce payment thereof against any party thereto can be acquired through or under such signature unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority."

We are referred to one or two Louisiana decisions which support the proposition that a payee could maintain an action against a drawer bank paying a forged check. Vanbibber vs. Bank, 14 La. Ann. 486; Gordon vs. Muchler, 34 La. Ann. 604. But in State ex rel. St. Amant vs. Bank of Commerce, 49 La. Ann. 1060, 22 South. 207, the contrary doctrine was announced.

The guarantee of the Citizens Bank of the endorsement by plaintiff's agent inured to the benefit of the Canal Bank and protected it against the payment of the check to the Citizens Bank. But plaintiff has not

been injured. As the payee of the check it was entitled to the money it called for and if payment was made by the Citizens Bank to its depositor and by the Canal Bank to the Citizens Bank upon a forged or unauthorized endorsement of a sum of money equivalent to the face of the check, the check has not been paid nor has the drawer's debt to plaintiff been discharged. The plaintiff has no right of action against either bank, for under the very provision of the law quoted by plaintiff (Sections 21 and 23 of the Negotiable Instrument Act) the check belonging to plaintiff has not been discharged and the endorsment of plaintiff's name "whose signature it purports to be is wholly inoperative and no right to retain the instrument or to give a discharge therefor or to enforce payment thereof can be acquired through or under such signature". If the drawee bank accepts the check by certifying it or by other means indicating that the drawer has funds to meet the check, the bank is then in the position of the drawer *quo ad* the holder and the holder may sue the bank.

Plaintiff contends that the guarantee of the Citizens Bank amounted to any acceptance under Section 189 of the Negotiable Instrument Law to the effect that a bank is not liable to the holder unless or until it accepts or certifies the check. We do not think so. This endorsement was no more than a statement of responsibility to the payee bank or others acquiring the check subsequently, and in due course by the Citizens Bank for the genuineness of its depositor's endorsement.

The case of New York Produce Exchange Bank vs. Twelfth Ward Bank, 134 App. Div. 953, 118 N. Y. Supp. 1127, cited to us by counsel is not opposed to this view. In that case the bank upon which the check was drawn brought suit against another bank which had guaranteed the endorsements of a check which had been raised and the name of the payee changed and

the check deposited in the defendant bank in the substituted name. The court held the guarantee covered all the irregularities mentioned. But it was not a quit by the payee against the bank.

The rule is thus stated in Magee on Banks and Banking, 2nd Edition, p. 314:

"The weight of authority is that the payee of a check before it is accepted by the bank cannot maintain an action upon it against the latter as there is no privity of contract between them. The holder's remedy is against the drawer. The bank's liability, if any, is to the drawer."

In First National Bank of Washington vs. Whitman, 94 U. S. 344, the court said:

"It is further contended that such an acceptance of the check creates a privity between the payee and the bank is established by the payment of the amount of this check in the manner described. This argument is based upon the erroneous assumption that the bank has paid this check. If this were true, it would have discharged all of its duty, and there would be an end of the claim against it. The bank supposed that it had paid the check; but this was an error. The money it paid was upon a pretended and not a real endorsement of the name of the payee. The real indorsement of the payee was as necessary to a valid payment as the real signature of the drawer; and in law the check remains unpaid. Its pretended payment did not diminish the funds of the drawer in the bank, or put money in the pocket of the person entitled to the payment. The state of the account was the same after the pretended payments as it was before."

It is argued that we are not bound by the views expressed in other jurisdictions and that our special system of law suggests the application of different principles. We find no difficulty in approving the principles announced in the other jurisdictions to which we have referred and nothing inharmonious with the civil law or the Civil Code. Moreover, we are dealing with one of the several uniform laws adopted by our

State and it is desirable that the construction given such laws be uniform. See Arbuthnot vs. Reicheimer, 139 La. 804.

For the reasons assigned the judgment appealed from is affirmed.